FILED

AUG 3 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


MILTON JOSEPH TAYLOR
1175 Stevens Rd., S.E.
Washington, D.C., 20020
202-610-0939
          Petitioner,

                              CASE NUMBER  1:06CV01545

        VS.                   JUDGE: Emmet G. Sullivan

                              DECK TYPE: Habeas Corpus/2255
U.S. MARSHALL OFFICE
For The District of Colu-mbia    DATE STAMP: 08/31/2006
333 Constitution Avenue, N.W.
Washington, D.C. 20001

U.S. PAROLE COMMISSION
5550 Friendship Boulevard
Chevy Chase, Md., 20815

COURT SERVICES AND OFFENDER       Officer W.E. Lyke III
SUPERVISOR AGENCY for D.C.        7th District Police Station
3850 South Capitol St., S.E.
Washington, D.C., 20032          2455 Alabama Avenue, S.E.
(Mr. Tyrone Williams)            Washington, D.C., 20020


## A WRIT OF HABEAS CORPUS


        Petitioner, Milton J. Taylor, respectfully moves this

Honorable Court to "SQUASH" a frivolous detainer filed against

him, in regard to a parole detainer and vacate Mr. Taylor's

2 years Supervised Release Term, in violation of the Separation

of Power doctrine.  This case is also govern by the Criminal

Rule No.32, as well as govern by Title 28 U.S.C. § 2243. and Title

18 U.S.C. § 1201 (Kidnap statute for federal officers).

RECEIVED

AUG 1 6 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

-1-

## JURISDICTION

Jurisdiction is conferred upon this Honorable Court pursuant to Title 28 U.S.C. § 2241 and 2243. Jurisdiction is also conferred upon this Court pursuant to Title 28 U.S.C. § 453, authorizing the presiding judge to uphold this case in "GOOD FAITH" and release Mr. Taylor as justice requires. A district court has discretion to consider new theories raised for the first time in a post-trial brief. Abbott v. Equity Group, Inc., 2 F. 3d 613, 629 n. 59 (5th Cir. 1993) (citing United States ex rel. Am Bank v. C.I.T. Constr. Inc. of Tex., 944 F. 2d 253, 259 n. 8 (5th Cir. 1991, cert. denied, 127 L. Ed. 2d 565, 510 U.S. 1177, 114 S. Ct. 1219. Furthermore, "A Judge should be faithful to the law and maintain professional competence in it. He should be "UNSWAYED" by partisan interests, public clamor, or fear of criticism." Code of Judicial Conduct, A.B.A. Standard Canon Code No.3 (1).

## INTRODUCTION

A prisoner sentence have a beginning and an ending date, so therefore, no Governmental officials have judicial or legislative power to change this style of law at all, because it will violate the petitioner's 8th Amendment Rights. The Constitution prohibits both Congress and the various state from enacting ex post facto laws. See Warren v. U.S. Parole Commission, 659 F. 3d 183, 186. See also, Garner v. Jones, 529 U.S. 244, 250 (2000). See also, U.S. v. Thorne, 153 F. 3d 130 (4th Cir. 1998).

## STANDARD OF REVIEW

District Court judges must "strike" any respondents Opposition Motion filed by the U.S. Attorney Office, accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor." See Thompson v. Capitol Police Board, 120 F. Supp. 2d 78, 81 (D.D.C. 2000). Furthermore, when an individual claims that his custody violates the Constitution or laws or treaties of the United States, a federal court may grant a writ of habeas corpus. See 28 U.S.C. § 2241 (c)(3) (1994) or in some cases convert the writ into a "BIVEN'S ACTION", pursuant to Title 28 U.S.C. § 1331,

## ISSUE PRESENTENDED FOR REVIEW

1.    Whether federal judges should allow Congress to further violate the Separation of Power, by delegating judicial and legislative authority to the U.S. Parole Commission and violate D.C. Code Offenders 8th Amendment Rights ?

2,    Whether Government Officials have a legal right and special needs to deprive Convicted Felony of a Constitutional Rights, in violation of Title 18 U.S.C. § 241 and 242 ?

3.    Whether Congress can promulgate criminal statutes for the U.S. Parole Commission to 'waived' the petitioner's statutory rights to a future "SHOW CAUSE HEARING", in violation of the Criminal Rule No. 32.1 ?

## PERTINENT STATUTES, RULE AND AMENDMENTS

Criminal Procedure Rule No. 32.1 (a)(1). and (2).

(a)  Initial Appearance.

(1)  Person In Custody.  A person in custody for violating probation or supervised release must be taken without unnecessary delay before a magistrate Judge.

(A)  If the person is held in custody in the district where an alleged violation occured, the initial appearance must be in that district.

(2)  Revocation Hearing, Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction. See also, 353 F. 3d at 102, n.8

D.C. Code § 24-221.03.   Jail Time:  Parole which states:

(a)  Every person shall be given credit on the maximum and the minimum term of imprisonment for time spent in custody or on parole as a result of the offense for which the sentence was imposed. When entering the final order in any case, the court shall provide that the person be given credit for the time spent in custody or on parole as a result of the offense for which sentence was imposed. (Apr. 11, 1987, D.C. Law 6-218, § 5, 34 DCR 484). See Luck v. District of Columbia, 617 A. 2d 509 (D.D.C. 1992)(Luck I).

FIFTH AMENDMENT RIGHT.

The Double Jeopardy Clause states:  "[N]or shall any person for the same offense be twice put in jeopardy of life or limb. See U.S. v. Ragins, 840 F. 2d. 1184, 1188 (4th Cir. 1995).

## INTRODUCTION

This case involve a D.C. Code Offender (Mr. Taylor) being sentenced to 20 months in prison and a 2 years Supervised Release Term <u>imposed silently by Judge Wendell P. Gardner, Jr. in the D.C. Superior Court on May 7th, 2005.</u> Mr. Taylor's had pled guilty to Distribution of Heroin, with an 18 months "CAP" negotiated by the Government and the above judge accepting that plea bargin agreement. Upon Mr. Taylor violating his probation term in the year of 2004, judge Wendell P. Gardner, Jr. had "Breached" Mr. Taylor's 18 months cap and <u>re-sentenced Mr. Taylor above that 18 months cap</u>, by imposing 2 months above the prison term and had imposed a silently 2 years Supervised Release Term. On March 16, 2004, Mr. Taylor had filed a writ of habeas corpus (D.C. Code 23-110) before judge Gardner, Jr. but <u>judge Gardner, Jr. had refused to adjudicate the merits at all</u>. See attached transcripts as exhibits 2,5 thru 14. Furthermore, this 18 months cap issue is still pending on an appeal in the Court of Appeal for the District of Columbia and ineffective assistance of Counsel, <u>whereas the lodged detainer has been filed in a premature manner, for any action that can be really taken against Mr. Taylor</u>. See <u>U.S</u>. v. <u>Taylor</u>, 04-CO-541. Mr. Taylor's judgment and Commitment Order will show that judge Gardner, Jr. had "DELEGATED" Mr. Taylor's Supervised Release Term in the custody of the Parole Commission. See exhibit No.4.

## FACTS

1.   U.S. Parole Commission had lodged a detainer against Mr. Taylor with the U.S. Marshal Services for Mr. Taylor's Probation Office (Mr. T. Williams).  Mr. Williams had made several alleged allegations against Mr. Taylor (Failure To Report, Failed To submit to Drug Testing, etc.).  The U.S. Marshal officers and officer W.E. Lyke III for the Metropolitan Police at 7th District, located at 2455 Alabama Avenue, S.E., Washington, D.C., 20020, had appearred at Mr. Taylor's home address to "execute" a parole de-tainer for the U.S. Parole Commission.

## ARGUMENT

2.   Mr. Taylor had a legal right to "Protest" a <u>frivolous</u> filed detainer by law, when it will conflict with Mr. Taylor's "LIBERTY INTEREST" and when Criminal Statutes conflicts with each other.  Furthermore, this Court have a problem of ruling against executive officials intentionally violating the "SEPARATION OF POWER" doctrine.  See <u>Maurice D. Taylor</u> v. <u>U.S. Parole Commission</u>, et al., 05-CV-1887, <u>still pending for approximated 11 months before judge R.W. Roberts</u>.  Let say if the U.S. Marshal execute their warrant/detainer against Mr. Taylor in the future and Mr. Taylor be resentence by the Parole Commission, but Mr. Taylor 'win's' his appeal, this case will be convert to a "LAW SUIT." for unlawful confinement against state and federal officials.

3.    Mr. Taylor was "silently" placed on Supervised Release Term <u>and not parole</u>, by his sentencing judge,  But the federal law dictates to the Court/judge, to review all "SHOW CAUSE HEARINGS" and probation hearings.  There was no rule ever 'classifying' a Supervised Release Offender, under the jurisdiction of the Parole Commission.  Supervised Release Offenders had always appear back before their sentencing judges, but in this case, Mr. Taylor will not ever again appear back before his sentencing judge at all.  Furthermore, federal judges should resolve all future 'threats' that will deprive Mr. Taylor of his liberty interest without fair due process of the law.  See <u>Steffel</u> v. <u>Thompson,</u> 39 L. Ed. 2d 505 (1994);  see also, <u>Boggs</u> v. <u>Bowron</u>, 842 F. Supp. at 547 (D.D.C. 1983).

4.    Mr. Taylor has not yet failed to appear in court at all on a 'Show Cause Hearing' and there is no 'warrant' filed against Mr. Taylor to be brought back before his sentencing judge. This court must interpret the law between the different of whether missing an appointment at the Probation Office, constitute  to a violation for a Court "FAILURE TO APPEAR" and grounds to be re-detain back in the custody of the Bureau of Prisons ?

5.    Pursuant to the D.C. Code statute § 24-406, gives the Parole Commission authority to '<u>forfeit</u>' Mr. Taylor's "STREET-TIME CREDIT", inviolation of the "EX POST FACTO" law.

-7-

## ARGUMENT

A.    Whether federal judges should allow Congress
to further violate the Separation of Power, by delegating
judicial and legislative authority to the U.S. Parole Com-
mission and violate D.C. Code Offenders 8th Amendment Rights ?

When a parole detainer has been 'executed' by the
U.S. Marshal Office and with the assistance of local police
officials, a prisoner will be carry straight to the U.S. Marshal
Office for fringerprint, photo and transport to D.C. Jail.   The
U.S. Parole Commission will 'schedule' a parole revocation hear-
ing, <u>as if he was an official judge</u>.   The panel will give the
parolee a chance to 'plea guilty to all alleged violation charges
and offer the parolee several months in jail to do.   The parolee
will <u>lose</u> his 'Street Time Credit' and additional months or years
will be added to his maximum Release Term date., in violation of
the "EX POST FACTO CLAUSE."   Title 28 U.S.C. § 2.98 (a)(2), 28
U.S.C. § 2.20, D.C. Code § 24-131 (a) constituted <u>delegated power</u>
to the U.S. Parole Commission to "REVOKE" a parolee sentence and
return him to custody.   Furthermore, D.C. Code § 24-206 (a) and
D.C. Code § 24-406 does delegate power to the U.S. Parole Com-
mission to forfeit street time credit, in violation of the Separa-
tion of Power and <u>conflict with the D.C. Code § 24-221.03, when
the court shall provide that the person be given credit for the
time spent in custody or on parole as a result of the offense for
which sentence was imposed.   See Luck v. District of Columbia,</u>
617 A. 2d 509 (D.D.C. 1992)(Luck I).

Moreover, this interpretation of the D.C. Code statutes on street time credit raises the question of whether petitioner's due process rights have been violated based on the principle that an unforeseeable interpretation of a D.C. Code statute that increase punishment, if applied retroactively or not, violates due process. Bouie v. City of Columbia, 378 U.S. 347, 353-54 (1964). The Fourth Circuit judges was [s]quarely faced with the same above issues of whether a prisoner Supervised Release Term can expand beyond his maximum release date, the answer was no. See U.S. v. Thorne, 153 F. 3d 130 (4th Cir. 1998). See also U.S. v. Milton J. Taylor, 97-0035-01, decided by judge Gladys Kessler on Feb. 4th, 2005. Furthermore, the double jeopardy clause prohibit parole officials from forcing a parolee to serve a second term of post-release supervision and this Court should declare the D.C. Code § 24-406, § 24-131 (a), § 24-133 9c)(2), § 403.01(b)(6), 28 C.F.R. § 2.218(c) and 18 U.S.C. § 3583(e)(3) as being unconstitutional applied to D.C. Code Offenders. See North Carolina v. Pearce, 23 L. Ed. 2d 656.

It is well settled under federal law, that state judges had delegated power to parole officials to make the final judgment on a parolee or Supervised Release Offenders and set the full terms of 'drug testings by the parole officer, See U.S. v. Johnson, 48 F. 3d. 806, 807-08 (4th Cir, 1995); see also U.S. v. Pruden, 398 F. 3d 241, 251 (3rd Cir. 2005). Parole and prison officials are only "EXECUTIVE" officials and cannot perform judicial function or legislative duties. . See U.S. v. Benz, 282 U.S. 304, 311, 51 S. Ct. 113, 75 L. Ed. 354 (1931).

Under the Parole Commission Phaseout Act, the Parole Commission was scheduled for dissolution on October 31, 2002, 15 years after November 1, 1987, the effective date of the Act. Walden v. U.S. Parole Commission, 114 F. 3d 1136, 1138-39 (11th Cir. 1997). Prior to the 2002 expiration period, Congress passed, and the President of the United States signed into law, legislation extending the Commission until October 31, 2005. See Pub. L. No. 107-273, 116 Stat. 1758, 1824. Similar legislation was recently passed and signed into law further extending the Commission to October 31, 2008. See U.S. Parole Comm'n Extension and Sentencing Commission Authority Act of 2005, Pub. L. No. 109-76, Section 2..

The President of the United State had "BREACH" his "SWORN OATH" in office, when he had signed a legislature "BILL" for Congress, extending the U.S. Parole Commission's authority to act in capacity of an "ARTICLE III JUDGE." The President had 'sworn in before the people of this country,' confessing that "HE WILL PERSONALLY PRESERVE AND PROTECT THE CONSTITUTION." But as it now stands today, George Bush had signed a "BILL" for the U.S. Parole Commission to deprived all D.C. Code Offenders of their Constitutional Rights, in violation of Title 18 U.S.C. § 241 & 242, contrary to his oath of office. Under the Article of the Constitution, the President, the Vice President and all civil Officers of the United States are , , • • , subject to impeachment for committing a crime. It is a crime to "KIDNAP" A PERSON WITHOUT A JUDGMENT AND COMMITMENT ORDER, because the Parole Commission detain a person on a "NOTICE OF ACTION."

Article III of the Constitution vest responsibility for
resolving cases and controveries with the court.  As Justice
Kennedy observed ⸱ ⸱⸱ ⸱ ⸱ ⸱ during his tenure on the Ninth
Circuit, this responsibility requires "both the appearance and
the reality of control by Article III judges over the inter-
pretation, declaration, and application of federal law to
maintain "the essential, constitutional role of the judiciary."
Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.,
725 F. 2d 537, 544 (9th Cir. 1984)(Kennedy, J.).  The judiciary's
"essential role" can be eroded just as easily through improvident
delegation as through interference by another branch, id.; there-
fore, separation of power forbids court from delegating their
Article III responsibilities.  See U.S. v. Melendez-Santana, 353
F. 3d 93, 101 (1st Cir. 2003).

This is not a case where 'nonjudicial officers' are support-
ing some judicial functions, but they have taking the ultimate
responsibility for the petitioner's Sentencing judge, whereas he
will never be violated by any state or federal judges, even if he
was to pick up another "NEW" charge in the future.  Parole officials
have no "interpretation of the law, they are un-license judges,
have the power to run a prisoner sentence 'consecutive' without
any judicial discretion and will 'Lock-Up' a person for refusing
to submit a drug test or DNA Test. This violates the Separation of
Power doctrine on purpose, because refusing to take a "DNA Test" is
not a new criminal offense nor does "PROBABLE CAUSE" ever exist at all.
This constitute a plan to "KIDNAP" state code offenders.

- 11 -

B.    Whether Government officials have a legal right and special needs to deprive a Convicted Felony of a Constitutional Rights and violate D.C. Code Offenders 8th Amendment Rights ?

Petitioner claim that collection of urine and blood sample from District of Columbia Code Offenders violates the Fourth and Fifth Amendments to the United States Constitution. He also argue that a positive urine test inevitably leads to the revocation of supervision and return to jail pursuant to a Parole Commission warrant.  Furthermore, he argues that requiring urine samples as a condition of release "is another form of DNA study and will "self-incriminate" himself at his own revocation hearing .  With regard to compulsory collection of DNA samples, petitioner Argues that prisoners are considered suspects on future charges without any cause to 'believe' that they may be guilty of crimes against the Government.

The Government cannot gain the benefit of obtaining "TAINTED-EVIDENCE" from D.C. Code Offenders to solve future crimes because of a hunch or public concern.  This unlawful search does violate the Criminal Rule No. 403 (prejudicial evidence implanted within a future trial).  The Government must prove their cases under "REASONABLE DOUBT" and not base on some one's self guilt or self-incriminated evidence.  See Miranda v. Arizona, 384 U.S. 436 (1966).  Judges have taken a sworn oath to protect a person's "CIVIL RIGHTS" and not to allow other government officials to strip  a person of that right. See Title 18 U.S.C. § 241 and 242. Urine samples should be declare unconstitutional.

Subsequently to the publication of the interim rule, Congress enacted Public Law 107-56, the USA Patriot Act. Section 503 of the USA Patriot Act provided that three (3) additional categories of offenses shall be treated for purpose of DNA sample collection as qualifying federal offenses, as determined by the Attorney General:  (1) Any offense listed in section 2332 (g)(5)(B) of title 18 United States Code;  (2) any crime of violence (as defined in section 16 of title 18, U.S. Code;  and (3) any attempt or conspiracy to commit any of the above offenses.  See 42 U.S.C. § 14135a (d)(2).  The Department of Justice published a proposed rule in the Federal Register on March 11, 2003, to implement this explained sample collection authority.  See Federal Register 11481 (March 11, 2003).  The statute and rules violated numerous provisions of the Constitution.  See also C.F.R. § 28.2.  The probation office "may use or authorize the use of such means as are reasonable necessary to detain, restrain, and collect a DNA sample" from any individual who refuses to give a sample.  See id. § 14135a (a)(4)(A).  An individual who fails to give a DNA sample is guilty of a class A misdemeanor.  See id. § 14135a (a)(5).  Furthermore, a defendant parole will be revoke by the Parole Commission, if he refuse to submit to taken a DNA Test for his parole officer. This constitute a "THREAT" to the person's liberty interest.

— 13 --

The collection of a DNA sample taken from any individual who refuses to give a sample is a threat to his or her human nature and Constitutional Rights invaded by Congress and those who execute the physical acts. Whether the enforcement comes through a court order or not, it is still remains to be unconstitutional under the Fourth Amendment, Fifth Amendment, Eighth Amendment, Nineth Amendment and the Fourteenth Amendment Rights. A condition of parole or supervised release term that has not been order by a judicial court, as an additional punishment, is a violation of the Separation of Power, because a felony charged that already has been prosecuted, cannot be converted into a small misdemeanor. A prisoner cannot become a suspect for a future charge that the government has an "unparticularized suspicion or hunch." U.S. v. Sokolow, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989) ( quoting Terry v. Ohio, 392 U.S. at 27, 20 L. Ed. 2d at 9090. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ..." Requiring a person to give blood sample constitutes a Fourth Amendment search. Skinner v. Railway Labor Executive Ass'n., 498 U.S. 602, 616 (1989) ("[T]his physical intrusion, penetrating beneath the skin, infringes upon an expectation of privacy that society is prepared to recognize as reasonable."). The ensuing chemical analysis of the sample to obtain physiological data" is also a search covered by the Fourth Amendment. Id. The fundamental task of any Fourth Amendment search. U.S. v. Knights, 534 U.S. 112, 118 (2001).

C.   Whether Congress can promulgate crimimnal statute
for the U.S. Parole Commission to 'waived' the peti-
tioner's statutory rights to a future "SHOW CAUSE HEAR-
ING", in violation of the Criminal Rule No. 32.1 ?

The petitioner is force to have been seen by the parole

panel and there is no record that the named petitioner has never

'waived his rights to be brought back before his sentencing judge

on any future Show Cause Hearing at all.  The Criminal Rule No.

32.1 require him to be brought back before a "MAGISTRATE JUDGE"

for any revocation hearing.  D.C. Code 1973 § 24-104, gives the

trial court the power to revoke probation and not the U.S. Parole

Commission.  Furthermore, D.C. Code § 11-923(b)(1), that judicial

power was always in vested in the hands of the Superior Court

Judges.  It is unlawful for a state judge to delegate a defendant

parole or supervised release term within the hands of the U.S.

Parole Commission, to further adjudicate any sentence.  See U.S.

v. Johnson, 48 F. 3d. 806 (4th Cir. 1995). Parole officials does

not take a 'Sworn Oath' in official office to uphold the law in

"Good Faith" and Article III Clause does not authorize the U.S.

Parole Commission to pass judgment on any parole violators.  See

Article III Clause, which says:

> "The judicial power of the United States,
> shall be vested in one supreme court, and
>  in such inferior courts as the Congress
> may from time to time ordain and establish.
> The judges, both of the supreme and in-
> ferior courts, shall hold their offices
> durinj good behavior, and shall, at stated
> times, receive for their services, a com-
> pensation which shall not be diminished
> during their continuance in office.

D.    Whether Government Immunity can protect  judges
who willfully disregard for the law in bad faith
and engage into a "FRAUD UPON THE COURT ?"

Mr. Taylor was "deceived" by the Government and judge

Wendell P. Gardner, Jr in the D.C. Superior Court on April 25th,

2002 at his plea hearing.  The Court's filed record shows that

he was "INDUCE" to had pled guilty to an 18 months Cap, mainly

when judge Gardner, Jr. had refused to fulfill that promise made

to Mr. Taylor.  Mr. Taylor's trial lawyer (Gerlyn Lawrence) had

conspired jointly with the Government, by coercing Mr. Taylor to

pled guilty to a negotiated "Plea Agreement" that the Court was

not going to honor at all.  Pursuant to the District of Columbia

contract law,  "[t]here must ... be honest and fair 'meeting of

the minds' as to all issues in a contract.  See U.S. v. Oruche,

257 F. Supp. 230 (D.D.C. 2003);  see also, Santabello v. New York,

404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971).  Furthermore,

judge Gardner, Jr. did not credit Mr. Taylor street-time while

spent on probation, as require by the D.C. Code § 24-221.03 (a),

nor did judge Gardner, Jr. had informed Mr. Taylor of the nature

and consequences of his 2 years Supervised Release Term being con-

verted to parole and breached the 18 month cap on purpose.  See

U.S. v. Thorne, 153 F. 3d 130 (4th Cir. 1998). This was a fraud

upon the Court and Mr. Taylor have a Constitutional Right to pursue

his "BREACH OF CONTRACT" claim before a federal court, when the

state panel had refused to recognized "JUDICIAL BIAS" on an appeal.

See Sullivan v. Dugger, 721 F. 2d 719;  In re Union Leader Corp.,

242 F, 2d 381, 384 (1st Cir).

- 16 -

## REASON WHY THE DETAINER SHOULD BE SQUASH

Parole Detainers has been unlawfully 'delegated' to the U.S. Marshal Office, because a 'Judgment and Commitment Order' is never signed by a judge, to place a person within the custody of the D.C. Jail.  <u>This constitute a scheme to "KIDNAP" in another form, in violation of the Criminal Code,</u> Section 1201, (18 U.S.C.),

Parole Detainers constitute strickly "LOCK-UP" without any explanation, but Show Cause Hearings give a person the opportunity to argue his own case on the merits. In a proper case it is the duty of the federal court to relive a prisoner from the burden of a state detainer and the court has jurisdiction to do so.  See <u>Bedwell</u> v. <u>Harris</u>, 451 F. 2d 122 (10th Cir. 1971); <u>Posey</u> v. <u>Dewalt</u>, 86 F. Supp. 2d 565 (E.D. Va. 1999). "The issuance of a detainer, is an act of the state based on that state's laws and process, and the detainer, in effect, is a custodial hold of the issuing state.  See <u>Esposito</u> v. <u>Mintz</u>, 726 F. 2d 371, 372 (7th Cir. 1983).  The detainer is having an adverse on the petitioner's Supervised Release Term and his pending appeal, as well as a violation of the Separation of Power doctrine.  Federal Courts have judicial power to resolve the dispute of any bad statute enacted by Congress.  See <u>Mistretta</u> v. <u>U.S.</u>, 102 L. Ed. 2d 714;  see also, <u>Marbury</u> v. <u>Madison</u>, Supreme Court Cite.  It is also should be noted that a person who is on parole is 'in custody' for purposes of the habeas statute.  See <u>Jones</u> v. Cunningham, 371 U.S.236, 243 (1963; <u>Wilkinson</u> v. <u>Dotson</u>, 125 S.Ct. 1242.

However, judges may stay mindful that "Supervised release carries with it the possibility of revocation and jail time", so therefore. the petitioner is 'in custody' within the meaning of section 2241, when he had filed his petition in the district court. See U.S. v. Brown, 117 F. 3d 471, 475, (11 Cir. 1997);  U.S. v. Essig, 10 F. 3d 968, 970 n3 (3d Cir. 1993)  See also, Carafas v. LaVallee, (a person may pursue appellate review even after he has been released from that custody).

Separation of Power encompass this entire case, as well as a "FRIVOLOUS-DETAINER" that's adversely effecting the petitioner's Supervise Release Term/parole .  Parole official or probation officials cannot resolve any cases or controversy issues for the court nor can they re-impose a pending sentence for the Court. See U.S. v. Pruden, 398 F. 3d at 251 ( We agree with this statement of the standard, which properly balances the need for flexibility with the constitutional requirement that judges, not probation officers, set the term of a defendant's sentence.  Other courts are generally in accord with this view.  See United States v. Allen, 312 F. 3d 512, 515-16 (1st Cir, 2002)(adopting Peterson test and finding that a mental health condition was intended to be mandatory, with the administrative details delegated to the probation officer);  Kent, 209 F. éd at 1078-79.).  What makes the Parole Commission "PHASE OUT ACT" unconstitutional, is that, parole officials cannot make the final resolution on a parolee sentence and their discretion should not exceed beyond a "RECOMMENDATION" to a sentencing judge. See U.S. v. Johnson, 48 F. 3d 806, 807-08 (4th Cir. 1995).

-18-

## PURPOSE WHY THE WRIT SHOULD BE GRANTED

The petitioner had "PROTESTED" the U.S. Parole Commission has no authority over his sentence or ability to revoke his said parole release term date, because it is an unconstitutional federal 'entity' under the Department of Justice, that had "IMPERSONATED" to became an "ARTICLE III JUDGE" and had arbitrarily violated the "SEPARATION OF POWER" doctrine.

Any adverse rulings handed down by this Court, will only 'conflict' with other Circuit Court judges within the 1st, 3rd and 4th Circuit Courts.  See U.S. v. Melendez-Santana, 353 F. 3d 93, 101 (1st Circuit), U.S. v. Pruden, 398 F. 3d 241, 251 (3d Circuit) and U.S. v. Johnson, 48 F. 3d 806, 807-08 (4th Circuit).

This Court must now investigate why the Supreme Court Judges had declared the U.S. Parole Commission was "ABOLISHED" in the first instance of 1992 and Congress had over-turned a set precedent by the Supreme Court ?  See U.S. v. Mistretta, 488 U.S. 361; and the other case U.S. v. Estrada, 680 F. Supp. 1312, at 1338 (D. Minn. 1988).  Furthermore, the petitioner' Court filed record, will prove that he has never 'waived' his statutory rights as to be seen within a judicial Show Cause Hearing, for any revocation violation at all.

However, this case should be expedite as soon as possible, or the petitioner's requested relief will become "MOOT" and he will suffer an "IRREPARABLE-INJURY".

~ 19 ~

The lodged detainer against Mr. Taylor has caused him to
be 'deprived of a job, because Mr. Taylor cannot be afforded to
obtain a "POLICE CLEARANCE", WITHOUT BEING DETAIN BY law Enforce-
ment officers. This is surely another form of a "threat' to
Mr. Taylor's 'liberty interest' and he does fear to be "KIDNAP"
behind bars again.

Title 28 U.S.C. § 2243 demand this Court to 'expedite'
this case, without reviewing the "Government's Opposition' motion.
Furthermore, this is a "FEDERAL-DETAINER" being lodged against Mr.
Taylor and his attached transcript exhibits, clearly shows that his
sentence involve an "18 MONTH CAP" issue on his appeal and not an
imposed 2 years Supervised Release Term. <u>Please see exhibit No.14</u>.

Based on the mere fact that Mr. Taylor's state appeal has
been placed in "LIMBO-STATUS"by the D.C. Court of Appeal and the
<u>18 month Cap issue was never adjudicate on the merits by the first</u>
<u>panel</u>, Mr. Taylor had filed a "REHEARING EN BANC" motion before
that same court of appeals, <u>which is still pending</u>. See Exhibit No. 15, 16 + 17.

When a defendant had filed a state "Writ of Habeas Corpus"
before his sentencing judge and <u>justice was denied all together</u>
<u>in state courts</u>, his proper remedy is to move the Federal Court
for redress on his outstanding claims, <u>mainly when his 2 years</u>
<u>Supervised Release Term is not apart of his transcripts</u> and <u>the</u>
<u>Court's "Audio Sound Tape" record</u>. Mr. Taylor's Sentencing Tran-
script on page No.10, as exhibit No. 13, clearly shows that judge
Gardner, Jr. becamed frustrated and punished Mr. Taylor for filing

- 20 -

a Writ of Habeas Corpus in his Courtroom, which states:

> THE COURT: Let's see.  It was a plea.  It was a
> plea.  And he pled back in 6-14-02 and all of
> sudden it's eight or nine, I don't Know how many
> months later, that all of a sudden that his
> lawyer wasn't any good.  But that's not going to
> forestall anything today, the fact that he filed
> a pro se 23-110 motion.  We can deal with that
> later, (See line 5 thru 11).

Any reasonable judge or person will discern that from the
above testimony of judge Gardner,Jr. had punished Mr. Taylor for
exercising his Constitutional Rights and <u>suspended</u> his writ of
habease corpus, because Mr. Taylor is a "JAIL-HOUSE LAWYER" known
to both courts,  It is well established pursuant to Article I,
section 9, Clause 2:

> "The privilege of the writ of Habeas Corpus
> shall not be suspended, unless when in cases
> of Rebellion or Invasion the public safety
> may require it."

On the contrary, judge Wendell P. Gardner, Jr had observe Mr. Taylor's
18 months Cap, sentence him to 20 months in jail and the transcript
states that <u>you have saved yourself 22 months</u>, "Take him back, marshal"
but <u>the record does not speak of any impose 2 years Supervised Re-
lease Term at all. See transcript No.11, line 20 thru 25.</u>

Based on the information presented in this motion and supported transcripts attached hereto, give this Court grand jurisdiction to "SQUASH" a frivolus detainer filed against Mr. Taylor and this Honorable Court can 'vacate' his 2 years Supervised Release Term, based on the Separation of Power doctrine, as well as "CAP" Congress intention to extend the U.S. Parole Commission's authority any further. A writ of Mandamus should be filed against the U.S. Marshal Office, not to 'HONOR" any more frivolous filed detainers for the Parole Commission.

<u>CONCLUSION</u>

The petitioner respectfully request that this writ be granted expeditiously, as justice require.

Respectfully submitted,

_Milton J. Taylor_
Milton J. Taylor
Prose Counsel
1175 Stevens Rd. S.E.
Washington, D.C., 20020

Executed on this 14th, day of August, 2006.

CC:  All parties are being serve and Kenneth L. Wainstein,
     U.S. Attorney Office, 555 4th St. N.W., Washington,
     D.C., 20530, on this same above date.

- 22 -