UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MILTON JOSEPH TAYLOR  : :
    Petitioner,  :
         :
         :
   v.     :  Civil Action No. 06-1545
         :  (Judge E.G. Sullivan)
         :
U.S. MARSHAL SERVICE, et al., :
    Respondents. :

---

## MOTION FOR A CERTIFICATE OF APPEALABILITY

  The petitioner in the above Caption Case Number, now contest that Judge Sullivan had intentionally denied him of several Constitutional Rights in this case and had denied Mr. Taylor access to a Federal Forum, as to address his outstanding issues for any relief, in violation of his A.B.A. Canon Codes.  Judge Sullivan had a legal obligation to this Court, to act in a professional manner, not to be "BIAS" towards Mr. Taylor and to construed Mr. Taylor's pro se complaint 'favorably' under the law. See Haines v. Kerner, 404 U.S. 519, 520 (1972).  See also, Milton Joseph Taylor v. U.S. Probation Office, 409 F. 3d 426 (D.C. Cir. 2005).

  Based on the mere fact, that Judge Sullivan has 'concur' in his written Court Order, that the U.S. Parole Commission has been authorized to revoke Mr. Taylor's supervised release term without a snetencing judge's approval, give the Appellaie-Court jurisdiction to review Mr. Taylor's separation of power claim.

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT
RECEIVED
SEP 27 2007

## QUESTION PRESENTED FOR REVIEW

1.      Whether judge Sullivan had purposely abused his decision
        by failure to address Mr. Taylor's separation of power
        claim ?

2.      Whether Congress impermissibly delegated judicial power
        to the U.S. Parole Commission, to infringe upon the
        Judicial Branch and violated the separation of power ?
        doctrine ?

3.      Whether the U.S. Parole Commission can impose a "NEW"
        sentence, without violating the Double Jeopardy Clause ?

4.      Whether Congress and a sentencing judge can waive a
        parolee or supervised release offender right to a
        judicial show cause hearing ?

5.      Whether a judge should recuse him or herself, when they
        know that their impartiality will be question later ?

6.      Whether the appellant in this case was denied access to
        a Federal Forum, to had his outstanding issues heard on
        the merits, in a proper manner ?

7.      Whether the appellant was exposed to an unlawful confine-
        ment, in violation of his 8th Amendment Rights ?

8.      Whether parole or probation officials should be able to
        drug test a person beyond the three (3) periodical testing
        procedure, in violation of the Federal Law ?

9.      Whether the U.S. Parole Commission should be "PHASE OUT"
        in its entirety, before the dead-line of October 2, 2008 ?

## JURISDICTION

jurisdiction was conferred upon the District Court pursuant to Title 28 U.S.C.§2241 in the first instant to had heard these claims.  The Appellate Court have jurisdiction to review any case pursuant to Title 28 U.S.C. § 1291. Predecessor of 28 USCS section 2106 gave Court of Appeals abundant authority to correct error in sentence without disturbing conviction. Hanley v. U.S., (1903 CA2 NY)  123 F. 849, different results reached on reh on other grounds (1904 CA2)  127 F. 929, cert. den 48 L. Ed. 1160, 24 S. Ct. 858.  Court may exercise its supervisory powers under 28 USC section 2106 to vacate 'unchallenged portion of sentence as well as challenged portion. McClain v. U.S., 676 F. 2d 915.  SEE U.S. v. Caldwell (1974)  178 App. DC 20, 543 F. 2d 133, cert. den. 47 L. Ed. 2d 97.

### APPELLANT HAVE A STANDING TO CHALLENGE 28 U.S.C § 2253 as being UNCONSTITUTIONAL APPLY TO HIM.

The appellant now "PROTEST" the Constitutionality of Title 28 U.S.C. § 2253, to be a "SHAM" statute enacted by Congress, which grants the prosecutor attorney to "OBSTRUCT THE DUE ADMINISTRATION OF JUSTICE." Congress is prohibit from implementing the above sham statute to "INFRINGE" upon the appellant's right to appeal a judge's adverse decision and to grant appellate-judges to deny a person access to their court.  The appellant is only require to file a "TIMELY" notice of appeal only before the district court and a pleading cannot be consider 'successive', when the merits was never address.

## NATURE OF THIS CASE

On June 3rd, 2005, Mr. Taylor's Civil ~~Apeal~~ *APPEAL* was over-turn by the D.C. Circuit Judges, remanded back to the district court for further review.  The case was appointed to Judge Sullivan" to hold the evidentiary process, but Judge Sullivan had failed to address the merits and dismissed Mr. Taylor's Law Suit filed against Government officials.  See Taylor v. U.S. Probation Office et al., 409 F. 3d. 426 (D.C. Cir. 2005) (District Court Civil Action No: 1:03 -cv-2I24 -EGS).  On August 8th, 2005, Mr. Taylor had filed a Writ of Mandamus against Congress-Woman Eleanor Holmes Norton, U.S. Parole Commission, et al. contesting the unlawful authority delegated to   U.S. Parole Commission and Judge Sullivan had decline to addres the merits in Mr. Taylor's Civil Action on April 21st, 2006.  See Taylor v. Eleanor Holmes-Norton, See Appeal No. 06-5160, D.C. Circuit, (District Court No: 1:05-cv-1634-EGS). Mr. Taylor had filed a "CERTIFICATE OF APPEALABILITY" in the above case and it was denied by Judge Sullivan on September 20, 2006, but was not review by the Panel Judges. On August 31, 2006, Mr. Taylor had filed another Writ of Habeas Corpus before the district court, trying to be release from the D.C. Jail, due to a parole warrant and a motion to "RECUSE" Judge Sullivan, but Judge Sullivan had dismissed Mr. Taylor's second writ August 1st, 2007. As a result of judge Gardner had sentenced Mr. Taylor to 20 months in prison on June 14, 2002, beyond an "18 months Cap", a parole sentence violation should not had been 'valid' on December _____, 2006.

## STATEMENT OF THIS CASE

Mr. Taylor was transported to the Federal Correctional Institution, Petersburg Virginia from the D.C. Jail to serve his 20 months prison term, but unfortunately Mr. Taylor was forced by prison officials to had served an enhanced 24 months sentence behind bars out of retaliation, because prison officials would not credit Mr. Taylor his 4½ months Pretrial Custody from July 30, 2001 to January 8th, 2002. See Taylor v. U.S. Probation Office, et al. 409 F. 3d 426 (D.C. Cir. 2005).

Mr. Taylor was released from prison on June 17, 2005, to serve his supervised release term, with a U.S. Parole Commission's Form instructing Mr. Taylor to participate in a "Special Drug After-care Condition" that was not ever imposed by Mr. Taylor's sentencing trial judge at all.

On March 30, 2006, Mr. Taylor's Probation Officer (Mr. Tyrone William) had informed the United States Parole Commission ("USPC") that Mr. Taylor had failed to comply with the above condition of release, Failure to Submit to Drug Testing, Use of Dangerous and Habit Forming Drugs and Failure to Report to Supervising Officer as Directed. See Government's Exhibit No. C.

On October 23rd, 2006, the U.S. Marshal Officers had executed a Parole Warrant against Mr. Taylor at his wife resident in Lanham, Maryland, than transported Mr. Taylor back to their own D.C. Office for fingerprint and photo and than transported over to the D.C. Jail without having a state-judge to hold a Probable Cause Hearing or a judicial "SHOW CAUSE HEARING" in the Superior Court.

After Mr. Taylor's October 23, 2006 arrest on the U.S. Parole Commission's warrant, a U.S. Parole Commission hearing examiner conducted Taylor's probable cause hearing on October 27, 2006 at the D.C. Jail and 'not at the Superior Court'.  See Probable Cause Hearing Digest, attached hereto as Ex. D. Mr. Taylor was coerced......induced and threatened by the Parole Examiner to accept an 8 months prison term Expedite Plea Proposal and waive his "Administrative Revocation Hearing or else the U.S. Parole Commission will automatically impose a 36 months prison term and a 60 months supervised release term."  The Government's Exhibit No. D, form clearly affirm the above threat and blackmail facts made by the Parole Examiner.

It is now clear from the Government's Exhibit No. E, as written by Mrs. Tricia Nichols to Mr. Kerry Kemble in her letter, confirms that Mr. Taylor had to 'waive his administrative revocation hearing and accept responsibility for all alleged violation behavior, as long with the "NEW" 8 months prison term and the additional 52 months supervised release term imposed by the U.S. Parole Commission.

Mr. Taylor had to await for his parole "NOTICE OF ACTION" once he had arrived at F.C.I., Cumberland, Maryland on Feb. 22, 2007 and this parole decision was "NOT APPEALABLE" under any Administrative Review.  Mr. Taylor's 2 years supervised release term was schedule to expire on June 17, 2007 without the interruption by the Parole Commission imposin a new 5 years supervised release term and sub-jecting Mr. Taylor to a double jeopardy infraction.

- 2 -

## PRELIMINARY ARGUMENT FOR REVIEW

1. Whether Mr. Taylor's new term of Supervised Release should be vacated ?

In all actuality, Mr. Taylor had served an 8 months prison term unlawfully for the U.S. Parole Commission, under the custody of the D.C. Jail and the Bureau of Prison facility, whereas this Honorable Court cannot grant Mr. Taylor any sentencing reduction fron an irreparable-injury that Mr. Taylor had already suffered. But, this Court can make a final decision whether Mr. Taylor should remain to serve a parole 52 months Supervised Release Term, that was not apart of Mr. Taylor's original states-sentence.

Mr. Taylor's trial judge had imposed a 2 years supervised release term on May 7th, 2004 and this post-supervised release term had commenced on June 22, 2007, after Mr. Taylor was release from the BOP facility. The record reveal that upon Mr. Taylor being put back in jail (by the U.S. Marshal) on a parole warrant (Oct. 23rd, 2006). Mr. Taylor had only 8 months left before his 2 year super-vised release term was going to expire. On the contrary, the U.S. Parole Commission had <u>converted</u> that 8 months post-supervision term into an 8 months prison term, by revoking Mr. Taylor's <u>original</u> sentence, in violation of the double jeopary clause.

It is very clear from Mr. Taylor's Judgment and Commitment Order, that the U.S. Parole Commission will revoke his sentence, if Mr. Taylor will violate any condition of release term. <u>This informa-tion was never verbally told to Mr. Taylor at all in the courtroom</u>,

which constituted a violation of the Criminal Rule No. 403 and the Criminal Procedure Rule No. 11.

It is the expert opinion of Mr. Taylor that when a sentence is revoked and a new sentence imposed by the trial court, the newly imposed sentence supersedes the earlier sentence. Revocation means a setting aside or annulment of a prior act. Thus if Judge Gardner, Jr. intent was to add an additional 52 months to the 'unexpired period of supervision' he would had been required to state explicitly the total period of supervised release that was to follow the imposition of the first 2 years supervised release term and he would had stated on the record, that the U.S. Parole Commission can increase Mr. Taylor's sentence. A failure to inform Mr. Taylor of the nature and consequences of supervised release or parole, is an automatically vacate of the plea and conviction. See U.S. v. Thorne, 153 F. 3d. 130 (4th Cir. 1998).

If Judge Gardner intended on May 7th, 2004, to sentence Mr. Taylor to increase sentence, he should have incorporated that said language in the judgment order. Judge Gardner did not include any language in the new judgment that would lead this Court to believe he was 'modifying' rather than revoking the supervised release status of Mr. Taylor. Mr. Taylor was never afforded an evidentiary hearing on the above matter at all and this court have jurisdiction to re-solve the mix question of law herein.

~ 4 ~

The U.S. Parole Commission should not had been in vested with judicial-power to be able to "MODIFY" a trial court's sentence and as to increase an original sentence.

It is a true fact in this case, that the U.S. Parole Commission's decision is "NON-APPEALABLE", in which had prevented the petitioner from having an opportunity to argued his issue before an Administrative Board. Under Federal Law, a person must have a remedy at law to address his issues. See Heck v. Humphrey, 512 U.S. 477 (1994). A person cannot voluntarily waive his statutory right to appeal his sentence. See U.S. v. Raynor, 989 F. Supp. 43 (D.D.C. 1997). A person does not need to really exhaust his administrative remedies with a Parole Commission, when his constitutional amendment claim will be 'FUTILE" to be resolve by executive officials. See Laura v. Providence School BD., 680 F. Supp. 66, 69 (D.R.I. 1988). A parolee can file a Civil Action against the Parole Commission without exhausting a Writ of Habeas Corpus and can sue parole officials. See Wilkinson v. Dotson, 544 U.S. 74 (2005). Futhermore, once a prisoner had been release from jail, his pending petition cannot be consider to be "MOOT" or his issues to be forfeited by the court, because supervised release carries with it the possibility of revocation and jail time, so therefore, the petitioner is 'in custody' within the meaning of section 2241. See U.S. v. Brown, 117 F. 3d 471, 475. For this cause, the petitioner sentence should be vacated and the motion granted, as justice requires.

PURPOSE WHY THIS CASE SHOULD BE GRANTED

Congress, exercises exclusive control over District of Columbia pursuant to Article I, section 8, Clause 17 of the Constitution and it may distribute authority among the courts and magistrates regulate judicial proceeding in the District in any way it sees fit as it does not contravene the Constitution. Palmore v. U.S., 441 A. 2d 1000, 1003. It has been already settled in the D.C. Circuit Court of Appeals, that an executive officials or private citizens cannot ever "CONTRAVENE" a judge's Court Order. See Taylor v. U.S. Probation Office, et al., 409 F. 3d 426 (D.C. CIR. 2005).

It is well understood in this case, that the U.S. Parole Commission is an "EX-CHIEF POLICE" for the District of Columbia and ,,,,,,, he's acting in the capacity for a "quasi-judicial officer" without being a member of the bar, pursuant to Title 28 U.S.C. § section 636 (c) (e) (1), by holding an evidentiary process "OUTSIDE OF THE COURT'S JURISDICTION", whereas the parolee will have to go to jail first, before any hearing is to be held.  This provision of law highly "INFRINGED UPON A MAGISTRATE JUDGE'S LEGAL FUNCTION," in state and federal courts.  On the contrary, the duty of a magistrate judge is to hold an evidentiary hearing, bond hearing, and probale cause hearing, pursuant to the Criminal P. Rule No. 32.1 (a) (i) and (6) (b) (2).  Furthermore, a magistrate judge legal title is an "ARTICLE II JUDGE." For this cause, this makes the Parole Commission's fact-finding unconstitutional altogether.

## II.  ARGUMENT

A.  Petitioner claim that the USPC lacks the authority to take
any further action in his case, to revoke his Court sentence.

It is well settled under state and federal law, that Congress
has impermissibly delegated to the U.S. Parole Commission to order
the U.S. Marshal Services to execute parole warrants against all
D.C. Code Offenders, to take complete charge and control over hold-
ing probable cause and show cause hearing for the Superior Court
judges, to revoke a parolee or supervised release offender post
probationary/parole term, determine when a D.C. Code Offender should
be release from prison and the taken of "Street Time Credits", as
well as to impose a "NEW" sentence on D.C. Code Offenders. Pursuant
to the D.C. Code § 24-131, 24-133 and 24-406. which grants the U.S.
Parole Commission authority to perform a "JUDICIAL-FUNCTION" in
violation of the "SEPARATION OF POWER" doctrine.

It is unlawful for a trial judge to "RELINQUISHED" his or her
judicial power to decline to hold a show cause or probable cause
hearing on a D.C. Code Offender who violate his or her condition of
release term and "DELEGATE" this judicial function to executive
officials as to be responsible for holding cases and controversy
for the sentencing court, when parole officials have no interpretation
of the law.  Furthermore, subject matter jurisdiction lies with the
state judge.  See D.C. Code § 11-923.  See also, U.S. v. Menlendez-
Santana, 353 S. 3d 93 (1st Cir.).

-7-

The District of Columbia Code in relevant part provides:

> At any time during the probationary term the court...may revoke the order of probation and cause the rearrest of the probationer and impose a sentence and require him to serve the sentence or pay the fine originally imposed, or both, as the case may be, or any lesser sentence. If imposition of sentence was suspended, the court may impose any sentence which might have been imposed. See D.C. § 24-304 (a). If probation is revoked, the time the parolee had spent in the street on parole, shall be accounted towards his original sentence and not to be forfeited by the U.S. Parole Commission. See D.C. Code § 24-221.03.

The District of Columbia Code provides that:

> [CSOSA[ shall supervise any offender who is released from imprisonment for any term of supervised released imposed by the Superior Court of the District of Columbia. Such offender shall be subject to the authority of the United States Parole Commission until completion of the term of supervised release. The United States Parole Commission shall have and exercise the same authority as is vested in the United States district courts by paragraphs (d) through (1) of § 3583 of title 18 United States Code.

D.C. Code § 24-133(c)(2); see D.C. Code § 24-403.01(b)(6) ("Offenders on supervised release shall be subject to the authority of the United States Parole Commission until completion of the term of supervised release."). The federal provision cited, 18 U.S.C. § 3583 (d) - (i), pertain to conditions of supervised release, modification of conditions of supervised release, and revocation of supervised release for federal prisoners. The above statutes does grants the Parole Commission... judicial-power to MODIFY a trial judge's original sentence unlawfully, in violation of the separation of power doctrine and judges duty to revoke a sentence.

B    Whether federal judges should allow executive officials
to "USURP" the judicial power of the trial court, to
imposed a sentence in violation of the separation of
power doctrine ?

The Commission has violated the law in exercising

revocation and re-parole authority regarding D.C. Code offender.

In the 1997 National Capital Revitalization and Self Government

Improvement Act. Congress transferred parole release and re-

vocation functions over District of Columbia felony offenders

from the former District of Columbia Board of Parole to the U.S.

Parole Commission. <u>Franklin</u> v. <u>District of Columbia</u>, 163 F. 3d

625, 632 (D.C. Cir. 1998). The Commission is now charged with

carrying out these functions according to the parole laws and

regulations of the District of Columbia, but also given the

authority to amend and supplement such parole regulation. D.C.

Code § 24-133 (a)(1) and (c). Even decades before the Revitaliza-

tion Act, the Commission had the authority to revoke parole for

D.C. offenders incarcerated by the Bureau of Prisons in federal

institions. See D.C. Code § 24-409 (formerly § 24-209). Congress

had violated the principle of separation of powers in granting to

the Parole Commission revocation authority over D.C. parolees. The

question arises, of course, whether may be the policy implication

of this development, the de facto transfer of the sentencing author-

ity from the judge to the Parole Commission etc., result in a viola-

tion of due process, by way of performing judicial function for a

judge? <u>First, an agency is not a court</u>. See <u>Chevon U.S.A.., Inc.</u>,

467 US 837, 865-66, Because the sentencing judge had already <u>knowingly</u>

"RELINQUISHED" his/her power to revoke a parolee sentence, than

— 9 —

the conviction and sentence shall be vacate in a Federal Court.

The power to arraign a person in state or federal court, hold a person without bond, execute a warrant or subpeona, fine a person, hold a Show Cause or Probable Cause Hearing and to revoke a person's sentence is a judicial function and cannot fall in the ambit of administrative procedure, but must remain in the sound discretion of an "ARTICLE III JUDGE" only. The distinction between executive power over the execution of a sentence and judicial power over the imposition of a sentence was explained nearly seventy (70) years ago by the Supreme Court.

> "The judicial power and the executive power over sentence are readily distinquishable. To render judgment is a judicial function. To carry the judgment into effect is an executive function.  To cut short a sentence by an act of Clemency is an exercise of executive which abridges the enforcement of the judgment, but does not alter it qua judgment.  To reduce a sentence by amendment alters the terms of the judgment itself and is a judicial act as much as the imposition of the sentence in the first instance.  U.S. v. Benz, 282 U.S. 304, 311, 51 S. Ct. 113, 75 L. Ed. 354 (1931).

The power to impose sentence belongs to the judicial branch. "Judges have traditionally had the discretion to impose any sentence within the minimum or maximum limits prescribed by the legislature. Smith v. State, 537 So. 2d 982, 985 (Fla. 1989). A federal court, whose power is "strictly judicial." Muskrat v. U.S., 219 U.S. 346, 356, 31 S. Ct. 250, 81 L. Ed 2d 694 (1984).

The Fourth Circuit Judges has [s]quarely examine and define the real "ENCROACHMENT" on a Judicial Branch, when "EXECUTIVE OFFICIALS" had made the "FINAL RESOLUTION" within a criminal prosecution and as the same result of executive officials making a final resolution within a parole revocation hearing, in which, cannot stand to be constitutionally <u>delegated</u> by a trial judge or Congress.  See Title 28 C.F.R. § 2.20 (c).

Furthermore, the U.S. Parole Commission have been invested with judicial power to forfeit a parolee or supervised release offenders "STREET TIME CREDITS", pursuant to the D.C. Code § 24-406 and have judicial power to revoke a parolee original sentence for testing 'positive' from any 'illegal drug substance' or when the parolee refused to participate in a Drug Treatment Program.  The parole officer will 'compel" the parolee to drug test twice a week for 90 days and once a week after that.  This unconstitutional parole "DEMAND" and procedure, clearly infringe upon the Federal three (3) periodical drug testing proceeding, as required by a sentencing judge.  See <u>U.S.</u> v. <u>Melendez-Santana</u>, 353 F. 3d 93, 100-102 (1st Cir. 2003).  First of all, the petitioner/appellant has never waived his statutory right to a judicial Probable Cause or Show Cause Hearing at all and the failure of the sentencing court to announce the drug treatment condition at the sentencing hearing created a material 'conflict' between the parolee 'liberty interest' and the oral sentencing orders.  The procedure violated the parolee's right to be present at his/her sentencing hearing and constitute another violation of the separation of power claim.

— 11 —

C.   This Honorable Court must now issue an order against the U.S. Parole Commission to "PHASE-OUT" in its entirety.

Pursuant to Title 28 U.S.C. § 994, as to the replacement of the U.S. Sentencing Commission was the major result for the U.S. Parole Commission being "ABOLISHED" for good in the first instance.   Accordingly, because offenders will no longer be paroled after serving only a portion of the sentence imposed, the Act had eliminated the Parole Commission.   See U.S. v. Estrada, 680 F. Supp. 1312, 1338 (D. Minn. 1988).   The Parole Commission was also abolished by the Supreme Court Judges in the year of 1992, whether the Parole Commission and his lower officials had left their office, has nothing to do with the Parole Commission "IMPERSONATING AS A JUDGE" in this case.   The Federal Question now stand before this Court, is whether, Congress had ran an 'encroachment' on the above two (2) set precedent rulings, by extending the Parole Commission's authority further until October 2nd. 2008 ?

It is very true that, this assignment of authority gives an executive branch agency function in violation of Article III Clause, because executive officials power, only can extend to a "RECOMMENDATION-REPORT" to a trial judge to reduce a sentence. See 28 C.F.R. § 2.20 (c).   See also, U.S. v. Padia, 584 F. 2d 85, 86 (5th Cir. 1978). The Parole Commission have no interpretation of the law. he cannot adjudicate a Writ of Habeas Corpus or Law Suit in a state or federal court nor can he dispatch any "911 CALLS" in Chevy Chase Maryland from his office to arrest a citizen. For this cause, a parole sentence amount to False Imprisonment.

See <u>Lewis</u> v. <u>State of Connecticut Dept.</u>, 355 F. Supp. 2d 607-610.

It is unlawful for Congress to grant the Parole Commission the authority to "SUPERSEDE" a magistrate judge's judicial-power to release a parolee on his own "PERSONAL RECOGNIZANCE" for committing a new criminal offense while being on parole.  Furthermore, the Parole Commission is in vested with authority to revoke the magistrate judge's previously decision and have the U.S. Marshal to execute a parole warrant, by returning the parolee back in the custody of the D.C. Jail. This parole proceeding raise a serious Federal Question against the U.S. Parole Commission for "KIDNAPPING" D.C. Code offenders behind bars illegally, without an official Court Order, <u>in violation of the criminal statute Title 18 U.S.C. § 1201</u>. The U.S. Assistant Attorneys can no longer defend the U.S. Parole Commission's unlawful criminal action above, because the duty of a prosecutor, is to "LOCK-UP" all criminals, whether they are government officials involve and this claim above highly violates the parolee 8th Amendment Rights.  See <u>Bivens</u> v. <u>Six Unknown Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

The U.S. Parole Commission also have authority to issue an order to the BOP officials, to compel a parolee to turn himself into a Federal Halfway House for an additional "120 Days" upon being release on his prison expiration date.  This parole procedure does result to a double jeopardy claim, kidnapping and blackmail, if the parolee does not report to the Halfway House. Halfway House custody does result to jail credits that will not be counted later.

Lastly, the petitioner/appellant is a state-prisoner that has been "CONTRACTUALLY" placed in federal custody to serve a sentence within the Bureau of Prison facility. When a parolee violates any of his/her condition of release and is return back to prison, the Parole Commission takes his "Street Time Credit" make the parolee to serve a "SECOND TERM OF POST-SUPERVISION" and the Parole Commission takes an unlawful approach, by compelling the parolee to serve his state-sentence under the Federal "85 % Scale Law" pursuant to Title 18 U.S.C. § 3624, whereas the parolee State "65% Scale Law" is not being applied to his original sentence and has been "WHITE-WASHED", by the enactment of Congressional statutes.  See D.C. Code 24-406.

The enactment of the D.C. Code statute 24-406, grants the U.S. Parole Commission excessive power to adjudicate the cases and controversy alone, because when a parolee return back in the custody of the Bureau of Prison to serve a "NEW" sentence, the parolee does lose his original awarded "GOOD TIME CREDITS", because the re-apply of street-time credits had exceeded the original maximum sentence and the parolee will have to serve the full term expiration sentence, as if he was never granted parole by his sentencing judge. The Parolee will be serving a "LIFE-SENTENCE" under the jurisdiction of the Parole Commission.  The Constitution prohibits both Congress and the various state from enacting ex post facto laws.  See Warren v. U.S. Parole Commission, 659 F. 3d 183, 186.  Garner v. Jones, 529 U.S. 244, 250 (2000). The Good Time Credit Act has been white-washed.

More specifically, the legislature has no authority to
"delegate" to the executive branch an inherent judicial power.
Accord, Gough v. State ex rel. Sauls, 55 So, 2d 111, 116 (Fla.
1951).  In re Alkire's Estate, 198 So 475, 482, 144 Fla. 606,
623, (1940). This statutory grant of authority to the court must
be read as exclusive because the imposition of a sentence, in-
cluding any terms for probation or supervised release, is a core
judicial function.  See Ex Parte United States, 242 U.S. 27, 41,
87 S. Ct. 72, 74, 61 L. Ed. 129 (1916) (imposing punishment is a
judicial function): Whitehead v. United States, 155 F. 2d 460,
462 96th Cir.) ("[f]ixing the terms and conditions of probation
is a judicial act which may not be delegated"), cert. denied, 329
U.S. 747, 67 S. Ct. 66, 91 L. Ed. 644 (1946).

The petitioner contends that the U.S. Parole Commission is
not "ARTICLE III JUDGE" and should not had been in vested with
judicial-power... to impose a sentence on D.C. Code offenders and
"CSOSA" officials should no longer have jurisdiction over his sen-
tence, because the original sentence has already expired.

The Supreme Court has cautioned that "only the clearest
proof" is sufficient to 'strike down a statute as unconstitutional
on this ground.  See U.S. v. Ward, 448 U.S. 242, 248-249 (quoting
Flemming v. Nestor, 363 U.S. 603, 617, 4 L. Ed 1435 (1960).  See
Johnson v. City of Cincinnati, 119 F. Supp. 735, 474 (S.D. Ohio).

The privilege of a Writ of Habeas Corpus shall not be 'suspended' by any judges. See Article II Clause 9, section 2. A writ of habeas corpus should not be review by the same judge that had reside over the first case, so that the petitioner will not be expose to "JUDICIAL BIAS AND PREJUDICE" on his imposing claims. See <u>Tumey</u> v. <u>Ohio</u>, 273 U.S. 510, 523, 47 S. Ct. 437, 411, 71 L. Ed. 749 (1927); <u>In re Murchison</u>, 349 U.S. 133, 75 S. Ct. 623, 99 L. Ed. 942 (1955); <u>Del Vecchio</u> v. <u>Illinois Dept. of Corrections</u>, 31 F, 3d 1462, 1478-80 (10th Cir. 1984); <u>Fero</u> v. <u>Kerby</u>, 39 F. 3d 1462, 1478-80 (10th Cir. 1984); see also, <u>Dyer</u> v. <u>Calderon</u>, 122 F. 3d 720, 744 (9th Cir. 1997).

To dismiss a pro se complaint for 'lack of a certificate of appealability' raise a federal question for judicial estoppel on the record and the tolling usage for a writ of habeas corpus motion becoming 'inadequate and ineffective to test the validity of his detention, sentence and post-conviction. . See <u>Marbury</u> v. <u>Madison</u>, 5 U.S. (1 Cranch) 137,   L. Ed. 60 (1801). See also, In re Jones, _____ F. 3d. _____, ('4th Cir. _____). A denial of a motion to vacate sentence without a hearing ie review for abuse of discretion. See <u>Bradley</u> v. <u>U.S.</u>., 881 A. 2d 640 (2005). The Court judtified the creation of a Biven cause of action on the rule that "where federal protected rights have been invaded ... court will be alert to adjust relief." Id., 403 U.S. at 392 (quoting <u>Bell</u> v. <u>Hood</u>, 327 U.S. 678, 684). See <u>Davis</u> v. <u>Passman</u>, 60 L. Ed. 2d. 846.

-17-

Once judicial proceedings have been commenced, the state may not punish a prisoner for having sought judicial remedies and attacking Government officials misconduct. See Hudspeth v. Figgins, 584 F. 2d 1345, 1347 (1978); Russell v. Oliver, 552 F. 2d 115, 116 (4th Cir. 1977); Haymes v. Montanye, 547 F. 2d 188 (2d Cir. 1976); see also, Coleman v. Pexton, 362 F. 2d 905. "Consideration" of laws involve not only interpreting the relevant constitutional, statutory and common law, but also determining whether legislation and its execution are consistent with the constitution. See Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L. Ed. 60 (1801).

Section 455, by providing for recusal when a judge's impartiality "may reasonably be questioned" mandates an objective rather than a subjective inquiry. See United States v. Heldt, 668 F. 2d 1238, 1271 (D.C. 1981). Additionally, the Supreme Court has held that opinions formed during a judicial proceeding may in certain instances give rise to a duty to recuse. See Liteky United States, 510 U.S. 540, 551 (1994).

---

The Court's actions subjectively demonstrate its bias against Mr. Taylor by ignoring to make a proper ruling on the same issues presenting herein and had denied Mr. Taylor access to a state and federal forum. Mr. Taylor is not a parole violator, as Judge Sullivan admits in his Court Order on page no.2 , contrast to his second ruling, that the Parole Commission had jurisdict-

The previously rulings that Judge Sullivan had already made, strongly "CONFLICT" with other Circuits. The Fourth Circuit Court of Appeals Judges had already resolve Mr. Taylor's separation of power claim for all lower courts district judges. See U.S. v. Johnson, 48 F. 3d 806, 807-08 (4th Cir. 1995).  See also, Zakari v. Reno, _____ F. Supp. 2d _____ (D.D.C. decided by Judge Leonia Brinkema on May _____, 1999, in the U.S. District Court for the Alexandria Virginia.

The petitioner/appellant have no other remedy at law, to have his sentence or conviction vacated by a trial judge, nor do he have another court to challenge of constitutionality of the U.S. Parole Commission's unlawful procedures.

CONCLUSION

The petitioner/appellant respectfully request for this Honorable Court to grant this motion, as justice requires. because an appellate review on this case will only be an un-reasonable delay and will cause more injustice herein.

Respectfully submitted,

Milton J. Taylor

Dated: September, 27th, 2007